UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,        :
                                        :     **ORDER**
         v.                        :     15-CR-582 (WFK)
                                          :
RICHARD PAREDES,             :
                                          :
             Defendant.        :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 1, 2022, Defendant Richard Paredes ("Defendant") waived indictment and pled guilty pursuant to a plea agreement to a Superseding Information, charging him with one count of Paper Used as Money, in violation of 18 U.S.C. §§ 491(b) and 2. The Court now sentences Defendant and sets forth its reasons for his sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2). For the reasons to follow, Defendant is hereby sentenced to 12 months of probation, and a $25.00 mandatory special assessment.

    **I.**   **Discussion**

          a.  Background

      On September 16, 2015, the United States filed a Complaint against Richard Paredes ("Defendant") alleging he dealt in counterfeit United States currency, in violation of 18 U.S.C. § 473. Compl., ECF No. 1. Magistrate Judge Roanne L. Mann issued an arrest warrant for Defendant that same day and subsequently arraigned Defendant on the Complaint on October 15, 2015. ECF Nos. 2, 5. At his arraignment, Defendant waived a preliminary hearing and Magistrate Judge Mann ordered Defendant released on bond in an amount of $50,000.00 backed by two sureties. *Id.*

      Thereafter, on November 12, 2015, a federal grand jury returned an Indictment against Defendant, charging him with four counts of Dealing in Counterfeit Currency, in violation of 18 U.S.C. § 473. Indict., ECF No. 7. The Indictment also contains a criminal forfeiture allegation as

1

to all counts. *Id.* Magistrate Judge Robert M. Levy arraigned Defendant on the Indictment on November 20, 2015. Defendant pled not guilty to all counts.

On January 11, 2022, the Government filed a letter on behalf of the parties requesting that the Court hold a change of plea hearing for Defendant. ECF No. 51. The Court granted the Government's consent request, and, on February 1, 2022, Defendant waived indictment and pled guilty, pursuant to a plea agreement, to a Superseding Information, charging him with one count of Paper Used as Money, in violation of 18 U.S.C. §§ 491(b) and 2. Waiver of Indict., ECF No. 53; Plea Agreement, ECF No. 55; Superseding Information, ECF No. 56.

This Court hereby sentences Defendant and sets forth its reasons for his sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

### b. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the Sentencing Guidelines (the "Guidelines" or "USSG") in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision. However, the Sentencing Guidelines are merely advisory in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 264 (2005).

The Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor... the district court's discretion." *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It now addresses each in turn.

## II.   Analysis

    a.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

        *i.   Nature and Circumstances of the Offense*

The United States Secret Service ("USSS") led the investigation into the instant offense based upon information it obtained from a confidential source regarding an alleged counterfeit currency operation. *See* Presentence Investigation Report ("PSR"), ECF No. 60, at ¶ 9. The USSS investigation commenced in mid-2015 and involved a series of undercover operations in Queens, New York. *Id.* ¶¶ 9-11. The first of these undercover operations began on June 24, 2015. *Id.* ¶ 10.

On this day, a confidential source introduced Defendant to an undercover USSS agent, and, upon meeting with him, Defendant sold the undercover officer $15,000.00 in counterfeit currency

in exchange for $4,500.00 in genuine United States currency. *Id.* Defendant and the undercover agent met again on July 1, 2015. *Id.* At this meeting, Defendant sold the officer an additional $15,000.00 in counterfeit United States currency in exchange for $4,500.00 in genuine United States currency. *Id.*

Defendant and the undercover officer subsequently met three additional times. *Id.* The first of these meetings, the third overall, occurred on July 14, 2015, at which time the undercover agent again purchased $15,000.00 in counterfeit currency from Defendant in exchange for $4,500.00. *Id.* During this encounter, Defendant also informed the undercover agent he paid his supplier $24.00 in genuine currency for every $100.00 he obtained in counterfeit bills. *Id.* Their fourth meeting occurred on September 2, 2015. *Id.* At this time, Defendant and the undercover agent consummated the sale of $10,000.00 in counterfeit bills in exchange for $3,000.00 in genuine United States currency. *Id.* In addition to making this sale, Defendant informed the undercover agent he wanted to steal counterfeit currency from his supplier, and he proposed a plan with the undercover agent to do so. *Id.* Defendant and the undercover agent met for the fifth and final time on September 11, 2015. *Id.* They did so purportedly to further discuss Defendant's plan to steal from his counterfeit currency supplier. *Id.* However, this plan never came to fruition. *Id.* Law enforcement subsequently arrested Defendant on October 15, 2015. *Id.* ¶ 11.

Altogether, the Government calculates Defendant is responsible for trafficking $55,000.00 in counterfeit United States currency. *Id.* This figure represents the total amount Defendant sold the undercover agent. *Id.* The Government did not charge Defendant with any additional violations beyond those which stem from Defendant's dealings with the undercover agent between June and September 2015, as detailed above. *Id.*

4

### ii.   *Family and Personal Background*

Defendant was born on December 21, 1990 in Queens, New York. *Id.* ¶ 33. He is one of seven children born to the marital union of Maria and Jose Paredes. *Id.*

Defendant's parents raised Defendant and his six siblings in a middle-income household in Queens. *Id.* ¶ 36. Defendant's father works as a restaurant cook, and his mother is a homemaker. *Id.* ¶ 33. Defendant, his parents, and his siblings all continue to reside in Queens. *Id.* ¶¶ 35, 38. Defendant's parents and siblings also all continue to support Defendant despite his instant arrest. *Id.* ¶¶ 33-35.

### iii.   *Prior Convictions*

Defendant has no prior criminal convictions. *Id.* ¶¶ 26-31.

### iv.   *Educational and Employment History*

Defendant graduated from Louis D. Brandeis High School in Manhattan, New York in 2008. *Id.* ¶ 46. He attended York College in Queens from 2008 to 2010 but was ultimately dismissed from the school. *Id.* Defendant continued to pursue his education following his instant arrest. *Id.* He reports he has attended LaGuardia Community College in Queens since 2017, where he intends to graduate with an associate degree in liberal arts. *Id.*

In addition to his educational pursuits, Defendant has maintained relatively steady employment in the veterinary field throughout his adult years. *Id.* ¶ 47. He is presently working as a veterinary technician at Skillman Animal Clinic in Queens, where he has been employed since January 2023. *Id.* ¶ 48. Before Skillman, Defendant worked as a veterinary assistant in various clinics beginning in 2016. *Id.* ¶¶ 50-56. He began working as a veterinary assistant in September 2016 for Fetch-Fido's Retreat in Brooklyn, New York. *Id.* ¶ 56. He remained there until February

2017 before he accepted a veterinary assistant position at Dog City Island Daycare in Queens, where he worked from October 2017 until March 2020. *Id.* ¶ 54. Aside from his most recent term at Skillman, Defendant last worked as a veterinary assistant at International Animal Clinic, also in Queens, where he remained from August 2021 until December 2022. *Id.* ¶ 50. Defendant reports his parents financially supported him during his sporadic periods of unemployment between 2016 and 2023. *Id.* ¶¶ 49, 51, 53, 55

v. *Medical and Mental Health*

Defendant reports he is in good health and has no history of serious illness. *Id.* ¶ 40. Defendant similarly does not report any mental health issues beyond his purported tendency to "mak[e] bad decisions." *Id.* ¶ 41. Defendant claims he enrolled in Pretrial Services Special Options Services ("SOS") Program and mental health treatment to combat this tendency. *Id.*; *see also* ECF No. 15 (The parties' Consent Motion to Modify the Conditions of Release seeking to accept Defendant into the SOS Program dated April 28, 2016); ECF No. 16 (Court's Order granting the parties' Consent Motion dated May 2, 2016). While enrolled in the SOS Program and through the course of Defendant's mental health treatment, Defendant has sought to address his poor decision-making and the difficulties related to his ineffective ability to communicate with others. PSR ¶ 41. Defendant reports successfully completing treatment in November 2021 and notes substantial improvements in his overall health, decision-making, and management skills due to his work in the SOS Program. *Id.*

vi. *Substance Abuse*

Defendant does not report a history of illicit drug use aside from marijuana. *Id.* ¶ 42. Defendant claims he only uses this drug "once in a blue moon." *Id.* However, Pretrial Services has reported numerous instances in which Defendant tested positive for this substance throughout

the term of his supervision, in violation of the conditions of his release. *See id.* at 2-7, 43 (noting Defendant's urinalysis tested positive for marijuana on May 11, 2016; September 15, 2017; October 10, 2017; October 17, 2017; November 16, 2017; January 14, 2020; February 18, 2020; March 3, 2020; and June 25, 2021); *id.* at 44 (noting the results of numerous other urinalysis tests that returned negative results for marijuana); *see also* ECF Nos. 33, 37, 39, 45, 61, 65 (Pretrial Services' reports detailing Defendant's urinalysis results).

When confronted by Pretrial Services regarding his urinalysis results, Defendant generally expressed remorse for his poor decision-making, or he explained he used the drug due to work-related stress. PSR ¶ 43. On other occasions, he denied using the drug altogether. *Id.*

Defendant managed to abstain from illicit drug use between June 2021 and May 2023. *See* Probation's Recommendation, ECF No. 60-1, at 1; Violation Mem. dated Aug. 16, 2023, ECF No. 65. However, in May, June, and August 2023, Defendant tested positive for marijuana yet again. *See* Violation Mem. dated May 11, 2023, ECF No. 61; Violation Mem. dated Aug. 16, 2013.

   b.  The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Probation notes arguments both in favor and against Defendant on this point. *See generally* Probation's Recommendation. On one hand, Probation argues Defendant's instant offense

"reflects a disrespect for the law" and those who could have been harmed by Defendant. *Id.* at 2. At the same time, Probation concedes Defendant's conduct of conviction arises solely from his interactions with an undercover agent and thus "no harm was actually done." *Id.* Probation also argues Defendant is "seemingly a hard worker and law-abiding citizen" and notes Defendant has made substantial strides towards his rehabilitation and treatment through the SOS Program. *Id.* Probation adds Defendant has not only maintained gainful employment since his arrest, but he has also financially contributed to his family's rent and expenses during this time. *Id.* at 1-2.

The Government largely echoes Probation's view. *See generally* Gov't Mem., ECF No. 71. Specifically, the Government argues, while Defendant's conduct of conviction was "undoubtedly serious[,]" in the time since his arrest, Defendant has accomplished significant achievements in work stability; he has also consistently reported to Pretrial Services as required and has successfully balanced being a student with obtaining and keeping employment. *Id.* at 3. Thus, the Government argues, on the whole, Defendant's "lifestyle changes and steady employment demonstrate significant rehabilitation, particularly when combined with his lack of criminal history." *Id.*

Defense counsel raises several of the same arguments as Probation and the Government. *See generally* Def. Mem., ECF No. 70. In particular, defense counsel directs the Court's attention to Defendant's post arrest conduct, namely, his work in the SOS Program, his educational pursuits, and his gainful employment. In so doing, defense counsel argues Defendant has spent nearly eight years committed to "working tirelessly to better himself" under Pretrial Services' supervision and his track record evinces sustained progress and rehabilitation over time. *Id.* at 9.

    c.   The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant faces various statutory penalties stemming from his instant conviction of Paper Used as Money, in violation of 18 U.S.C. §§ 491(b) and 2. He faces a maximum term of imprisonment of one year and a term of supervised release of not more than one year. 18 U.S.C. § 491(b); 18 U.S.C. § 3583(b)(3). Defendant is also eligible for up to five years of probation. 18 U.S.C. § 3561(c)(2). Moreover, the Court may impose a maximum fine of $100,000.00, and the Court must impose a mandatory special assessment of $25.00. 18 U.S.C. § 3571(b); 18 U.S.C. § 3013.

> d. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for…the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The applicable guideline for the instant offense, Paper Used as Money, in violation of 18 U.S.C. § 491(b), is USSG §2B5.1(a). *See* PSR ¶¶ 16-25 (Probation's offense level calculation). USSG §2B5.1(a) provides a base offense level of 9. Moreover, pursuant to USSG §2B5.1(b)(1)(B), if the face value of the counterfeit items exceeded $6,500.00, the offense level is increased by the corresponding number of levels from the table in USSG §2B1.1. Since Defendant is accountable for $55,000.00 in counterfeit currency, 6 levels are added to Defendant's base offense level pursuant to USSG §2B1.1(b)(1)(D) as the instant offense involved over $40,000.00.

No additional enhancements apply.  However, some reductions are warranted here given the nature of this specific offense and Defendant.  Specifically, the offense level is decreased by two levels pursuant to USSG §3E1.1(a) as Defendant has clearly demonstrated acceptance of responsibility for the offense.  Moreover, Probation informs the Court Defendant qualifies for an additional two-level reduction pursuant to the Zero-Point Offender provision of USSG §4C1.1, included in the Guideline amendments which went into effect on November 1, 2023.  *See* Addendum to the PSR, ECF No. 69.  Probation argues Defendant is eligible for this reduction to the extent he does not receive any criminal history points from Chapter Four, Part A, and because he appears to satisfy all of the additional criteria set forth in USSG §4C1.1(a).  *Id.* at 1.

Altogether, this results in a total adjusted offense level of 11.  The Court previously noted Defendant has no prior or additional criminal history apart from the instant offense.  *See* PSR ¶¶ 26-31 (Defendant's criminal history).  Therefore, Defendant's criminal history score is zero, and thus, according to the sentencing table in USSG Chapter 5, Part A, Defendant falls into a criminal history category of I.  *Id.* ¶ 28.

A total adjusted offense level of 11 combined with a criminal history category I results in a recommended Guidelines range of imprisonment of between 8 and 14 months.  *See* Addendum to the PSR; Def. Mem. at 8.  Alternatively, Probation argues, pursuant to USSG §5C1.1(c)(2), the Court may impose a term of imprisonment of one month followed by a term of supervised release with a special condition requiring seven months of community confinement or home detention.  *See* Addendum to the PSR.  Probation notes an additional alternative sentence pursuant to USSG §5C1.1, comment. (n.10).  *See* Second Addendum to the PSR, ECF No. 72.  According to Probation, because Defendant received an adjustment under USSG §4C1.1 to account for his zero-point offender status, and because Defendant's applicable guideline range is in Zone A or B of the

sentencing table, a sentence omitting a term of imprisonment is appropriate and accords with USSG §5C1.1(b) or (c)(3) is generally appropriate. *Id.* at 1.

Defense counsel agrees with Probation's understanding here, and notes his understanding the Guidelines authorize a term of probation, pursuant to USSG 5B1.1, so long as that term includes at least an eight-month condition of community confinement or home detention. Def. Mem. at 8.

This being the case, no party recommends the Court impose a term of imprisonment here. *See* Def. Mem. at 1; Gov't Mem at 1; Probation's Recommendation at 1. Specifically, Probation recommends the Court impose a sentence of one year of probation with special conditions; the Government recommends the Court impose an unspecified below-guidelines sentence and argues a non-incarceratory sentence is appropriate for this Defendant; and defense counsel recommends the Court impose a probationary sentence that includes eight months of home detention. *See* Probation's Recommendation at 1; Gov't Mem at 1, 3; Def. Mem. at 9.

    e.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement...issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

All parties discuss the applicability of the recent amendments to the Guidelines. Def. Mem. at 8; Gov't Mem. at 2; Addendum to PSR at 1. Specifically, they note the recent changes to the Guidelines—specifically, the Zero-Point Offender provision under USSG §4C1.1—which calls for a two-level reduction for first time offenders, and argue Defendant is eligible for this reduction here. In so saying, defense counsel also argues Defendant "is precisely the sort of first offender who the Commission has recognized warrants leniency, and in particular deserves a sentence other

than imprisonment." Def. Mem. at 8 (referencing the 2023 Amendments in Brief, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821R.pdf, and quoting "Part B: Decreasing Offense Levels, Expanding Alternatives for Zero-Point Offenders," which states: "The amendment also implements Congress's directive at 28 U.S.C. § 994(j) that the Commission ensure the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.").

The Court agrees with all parties: Defendant is a Zero-Point Offender and thus the corresponding two-level reduction to Defendant's offense level is warranted here. The Court also recognizes the calls for leniency which underpin the amendments to the Guidelines and reflects this in its sentencing decision.

f.   The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Based on the aforementioned analysis, the Court's sentencing decision avoids unwarranted sentence disparities. *See also* Def. Mem. at 9 ("[A] sentence of probation would avoid unwarranted sentencing disparities from probationary sentences that are routinely imposed for comparable misdemeanor conduct. *See, e.g.*, *United States v. Barry Richards*, No. 96 Cr. 488 (ASC) (sentence of probation for misdemeanor violation of 18 U.S.C. 491(b)); *United States v. Rafael Tobi*, No. 91 Cr. 362 (ZC) (same); *United States v. Ataya*, 145 Fed. Appx. 331 (11th Cir. 2005) (same); *United States v. Leftenant*, 341 F.3d 338, 341 (4th Cir. 2003) (same).").

a.   The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable to this case.

As this is the final § 3553(a) factor to consider, the Court has concluded its sentencing analysis.

## II.   Conclusion

The Court finds a sentence of 12 months of probation and a $25.00 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but not greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and its addendum, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

**s/ WFK**
_____

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 21, 2023
Brooklyn, New York

13